UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALFONSO PAREDES CORTEZ,

Petitioner,

v.

CAUSE NO. 3:26cv892 DRL-SJF

MARKWAYNE MULLIN *et al.*,

Respondents.

OPINION AND ORDER

Immigration detainee Alfonso Paredes Cortez, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

The parties agree Mr. Paredes Cortez is a citizen of Mexico who entered the United States without inspection [6-2]. He says he has been living here for 15 years. He was taken into custody by United States Immigration and Customs Enforcement (ICE) agents in Chicago without a warrant on October 30, 2025, after an officer determined he was likely to escape before a warrant could be obtained. That same day, an administrative warrant was served on him, along with a notice to appear in immigration court. He was then transferred to Miami Correctional Facility pending the outcome of his removal proceedings.

In January 2026, he filed a habeas corpus petition challenging his detention without an opportunity for bond. He was removed to Mexico before his petition was decided, and the case was subsequently dismissed as moot. *See Paredes Cortez v. English, et al.*, No. 3:26cv24 (N.D. Ind. closed Feb. 27, 2026). While in Mexico, he filed a second habeas corpus petition

arguing that his removal was improper because his appeal to the Board of Immigration Appeals was still pending; this petition was dismissed for lack of jurisdiction because he was not "in custody" within the meaning of 28 U.S.C. § 2241. *See Paredes Cortez v. Mullin et al.*, No. 3:26cv443 (N.D. Ind. closed Apr. 3, 2026). Thereafter, his counsel successfully negotiated his return to the United States through administrative channels so that he could continue to participate in his removal proceedings. On June 10, 2026, he arrived at O'Hare Airport in Chicago and was paroled into the United States "for urgent humanitarian reasons/significant public benefit under 212(d)(5)(A) of the INA" [1-1]. He was immediately taken into custody and transferred to Miami Correctional Facility, where he remains.

After his return, he filed this habeas corpus petition. He again argues that he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). He seeks immediate release from custody or a prompt custody redetermination hearing before an immigration judge. In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondents

2

were instructed to address why this case differs from *Aguilar* and *Singh*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Paredes Cortez filed a reply.

As a preliminary matter, Mr. Paredes Cortez was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). He says he does not object to the dismissal of the other respondents, provided the Warden is able to carry out any relief ordered by this court. The court concludes that dismissal of the non-custodial respondents is appropriate. Though recent experience in immigration habeas cases informs that federal counsel will represent the Warden and ensure compliance with orders, the dismissal will be without prejudice to allow for reinstatement should it become necessary to effectuate any relief ordered by the court. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Paredes

Cortez's detention is authorized by § 1225(b)(2).[1] These arguments were rejected in *Aguilar*

and *Singh* (and other decisions). *See supra*; *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025

WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that

jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be

interpreted in the manner urged by the government.

Notably, the court of appeals recently found in deciding a motion for a stay pending

appeal that the government was not likely to succeed on the merits of its argument that the

mandatory detention provision contained in § 1225(b)(2) applies to individuals who are

arrested in the interior of the United States, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*,

161 F.4th 1048, 1061 (7th Cir. 2025), and thereafter reached an opinion on the merits that

echoed what this court has done, though one judge concurred in the judgment and not in

each part of the opinion's rationale and one judge dissented such that at times it reads as a

2-1 decision and at times, in effect, as a 1-1-1 decision, *see Castañon-Nava v. U.S. Dep't of

Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026). The Second Circuit, Sixth Circuit,

Tenth Circuit, and Eleventh Circuit reached a similar conclusion on the merits to *Aguilar*

and *Singh*. The court also read the split decisions from the Fifth Circuit and Eighth Circuit.

These opinions, together with others, illustrate just how complicated this patchwork of

---

[1] The Warden does not argue that Mr. Paredes Cortez's removal to Mexico and recent parole back into the country affects his custody status, and instead rests on the same argument asserted in *Aguilar* to support his detention. By statute, parole is not a formal "admission" into the United States, and the noncitizen's case proceeds "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); *see also Morales-Ramirez v. Reno*, 209 F.3d 977, 978 (7th Cir. 2000) ("'Parole' into the United States allows an individual physically to enter the country, but it is not equivalent to legal entry into the United States."). Thus, the court considers his current custody to be simply a continuation of his original detention.

statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh*, not least in light of *Castañon-Nava*.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Whether Mr. Paredes Cortez is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Paredes Cortez's arrest [6-2]. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

5

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these

procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Paredes Cortez gives no reason to believe this process is insufficient.[2] Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

It seems Mr. Paredes Cortez filed a motion for a custody redetermination, else the court would leave him to that task. He was denied a custody redetermination, either on the papers or via an individualized bond hearing, because the immigration judge found that he was statutorily ineligible for bond under § 1225(b)(2) [1-1]. The good judge was following BIA guidance, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but erroneous guidance as it turns out. Although he presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S.

---

[2] He describes alleged improprieties related to his removal to Mexico, the paperwork requiring him to appear in immigration court, and the proceedings that have occurred in that court. It is unclear if he included this information simply as background, but if he is trying to assert a claim related to any of these issues, it is beyond the scope of this court's review. *See* 8 U.S.C. § 1252(a)(5), (b)(9).

at 523; *see also Wong Wing v. United State*s, 163 U.S. 228, 235 (1896). Instead, the court expects the government to follow its procedures laid out in the law. It is for the Attorney General, through the individuals delegated his authority, to decide whether release is warranted under the circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases).

Some courts, including some in this circuit, have ordered a bond hearing. Perhaps in these other matters the petitioner explained why a custody redetermination, under procedures that already exist, would not be fair and sufficient process, or perhaps the petitioner gave some other salient reason, or perhaps the parties merely treated a customary bond hearing as shorthand for a custody redetermination. But the statute doesn't require a hearing. The regulations (insofar as the parties have provided them to the court this time) don't require it. Even the rules that govern redetermination proceedings before the immigration judge seem to afford that judge some ability to decide whether a hearing is necessary, though a custody redetermination must be given.

So, though the court agrees that detention under § 1226(a) without an opportunity to seek release under the procedures specified in the regulations—what the government has determined to be fair—would be unlawful, *see Accardi*, 347 U.S. at 265, the court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Paredes Cortez or to proceed differently. Only if the Attorney General, acting through designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must he be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J.,

concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

He argues that the court should require the government to bear the burden of proving that he should not be released at any forthcoming custody redetermination hearing, whereas under existing procedures "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527; *see also* 8 C.F.R. § 236.1(c)(8) ("alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"). It is not the court's job to rewrite the law. And his argument is effectively premature, indeed unripe, when no one can say how the government may proceed. If he is given a custody redetermination hearing, he may in fact prevail; and, if not, he has administrative remedies available to challenge an adverse ruling. *See Z.G. v. Olson*, ___F. Supp.3d___, 2026 WL 1279081, 2-4 (N.D. Ind. May 11, 2026) (Leichty, J.) (requiring exhaustion of administrative remedies in context of immigration bond determination). Without a prior denial on the merits alleged to be erroneous, the court leaves the parties to follow their process under § 1226.

For these reasons, the court:

(1) DISMISSES WITHOUT PREJUDICE Markwayne Mullin, Secretary of the United States Department of Homeland Security; David J. Venturella, Acting Director of Immigration and Customs Enforcement; and Samuel Olson, Director of United States Immigration and Customs Enforcement Chicago Field Office, as respondents;

9

(2) DENIES the petition [1], except to FIND that Alfonso Paredes Cortez must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Alfonso Paredes Cortez by **July 31, 2026**, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by July 31, 2026, at 5:00 pm ET;

(3) DIRECTS the clerk to email forthwith today a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction; and

(4) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by **August 4, 2026.**

SO ORDERED.

July 23, 2026                                    *s/ Damon R. Leichty*
                                               Judge, United States District Court